Melinda LOVELESS, Appellant,

v.

STATE of Indiana, Appellee.

No. 39S00–9304–CR–440.

Supreme Court of Indiana.

Nov. 17, 1994.

⊛➾357(4)

Russell A. Johnson, James M. MacAbee, Johnson & Gray, Franklin, for appellant.

Pamela Carter, Atty. Gen., Deana McIntire Smith, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees.

ON DIRECT APPEAL

DeBRULER, Justice.

This is a direct appeal of a sentence from the Jefferson Circuit Court. In accordance with a plea agreement, Appellant Melinda D. Loveless pled guilty to murder, criminal confinement, and arson. The plea agreement permitted a contested sentencing hearing where the State retained the right to pursue the maximum sentence available. The sentencing judge concluded that the arson and murder convictions merged and sentenced

Appellant to the maximum sentences available for murder, sixty (60) years, and criminal confinement, twenty (20) years, and ordered the sentences served concurrently, in accordance with the prosecutor's recommendation.

Appellant presents three issues for review: 1) whether the trial court erred in failing to consider mitigating factors that were clearly supported by the record;

2) whether the trial court considered improper aggravating factors; and

3) whether it was error to allow more than one (1) witness to provide "victim impact" information.

## FACTS

On January 10, 1992, Appellant, Lauri Tackett, Hope Rippey, and Toni Lawrence picked up Shanda Renee Sharer, the twelve-year-old victim, at her father's home in Jeffersonville, Indiana. The victim had been dating Amanda Heavrin, Appellant's "girlfriend." Appellant intended to frighten the victim so that she would have no further contact with Amanda.

Shortly after the victim entered the car, Appellant pulled the victim's head back and put a knife to her throat in order to scare her. Then the girls took the victim to an abandoned house in Madison, Indiana. While at the house, the group teased and scared the victim, but she was essentially unharmed when they left this house.

The girls went to Tackett's house, where Appellant and Tackett battered the victim. Appellant punched the victim in the stomach and kneed her in the mouth. Tackett choked and stabbed the victim, then locked her in the car's trunk. There is evidence that when the victim began screaming Tackett took a small knife and cut the victim again. Appellant and Tackett drove around most of the night, stopping so that Tackett could beat the victim with a tire iron.

The two girls returned to Tackett's house to pick up Rippey and Lawrence. They decided to dispose of the victim's body by burning it, apparently unaware of the fact that she was still alive. Rippey suggested a good location in the country for burning the body

and they drove there. Lawrence remained in the car. After Rippey poured gasoline on the victim and they set her on fire, Appellant returned to the body to pour the remaining gasoline on it. The girls left the scene and went to eat breakfast.

The body was discovered that morning by a hunter who immediately called the police. An autopsy established that the victim had died from smoke inhalation and burns, though there were a variety of other injuries.

## I

■ When a judge imposes the legislatively-established basic sentence, we presume that he properly considered all relevant information and imposed an appropriate sentence. *Gardner v. State* (1979), 270 Ind. 627, 388 N.E.2d 513. However, when a trial court decides that the presumptive sentence is inappropriate, he must establish a record adequate for a reviewing court to determine that those factors that were clear on the record were in fact considered by the sentencing judge. *Page v. State* (1981), Ind., 424 N.E.2d 1021. We retain the power to modify sentences. *See e.g. Best v. State* (1991), Ind., 566 N.E.2d 1027.

■ The relevant legislation governing the use of mitigating factors in sentencing is Ind.Code § 35–38–1–7.1. Subsection (c) lists ten (10) mitigators and subsection (d) emphasizes that a sentencing court may consider other matters in deciding on an appropriate sentence. Failure to find a mitigating circumstance clearly supported by the record gives rise to a belief that the court was not cognizant of it and therefore failed to consider it. *Jones v. State* (1984), Ind., 467 N.E.2d 681, 683.

■ In this case, the trial judge found two mitigating factors. He treated Appellant's age, sixteen years, and her lack of delinquent or criminal record as mitigating factors. Both are clearly present and deserve substantial mitigating weight. The trial court, however, made no reference to her overwhelmingly difficult childhood. He mentioned her psychological age and deficient mental capacity, but did not treat them as

actual mitigators, merely as relevant to the age mitigator.

Melinda Loveless's early years included, *inter alia,* being molested by her father as an infant; witnessing her father's molestation of her sisters, her cousin, and other young girls; witnessing her father's transvestism; witnessing her parents' multiple attempts to commit suicide; being rejected by her mother due to her lesbianism; and witnessing her father attempting to kill her mother.[1] These sorts of experiences tended to produce in the developing and dependent child a perverse view of human relationships which made her incapable of recognizing or responding to the pain of others. Such mitigating factors may be important when considering or evaluating an *enhanced* sentence.

[I]t is clear, that in every case where increased sentences are imposed the record *must* show that careful consideration commensurate with the denial of liberty involved has been given to the defendant. Due care must be taken to demonstrate a thorough and thoughtful sentencing decision supported by specific and detailed reasons and an indication that the court has considered the goal of rehabilitation. The record *must* show that the determination of the increased sentence was based upon a consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved and the relation of the sentence imposed to the objectives which will be served by that sentence.

*Abercrombie v. State* (1981), 275 Ind. 407, 415, 417 N.E.2d 316, 320 (emphases added).

▆▆▆▆ In this case the trial court was not obligated to consider Appellant's extremely dysfunctional family background and the impact it wrought upon her as a mitigating circumstance when conducting sentencing. There was no indication of how her admittedly painful childhood was relevant to her level of culpability and the trial court correctly refused to grant this mitigator any weight in the sentencing process. Where an error renders the sentence imposed manifestly unreasonable, the sentence must be revised or the cause remanded for a new sentencing hear-

ing. *Harrington v. State* (1992), Ind., 584 N.E.2d 558. However, since we find no error, no such action is warranted.

## II

The consideration of aggravating factors in imposing sentences is controlled by Ind.Code § 35–38–1–7.1(b). This subsection lists nine (9) factors that the trial court may treat as aggravating circumstances. None of these statutory aggravating factors was found by the trial court. Instead, the trial court considered other matters in accordance with subsection (d), the provision permitting the consideration of appropriate but unclassified factors.

The trial court found the existence of two aggravating circumstances warranting the maximum enhancement, that the victim of the murder was only twelve (12) years old, and the "gruesome nature" of the crime, "involv[ing] planning and result[ing] in the confinement of the victim for a period of over eight (8) hours and suffering by the decedent for the last four (4) to five (5) hours of her life" and "badly mutilat[ing]" the victim's body.

▆▆▆▆ Appellant was sixteen at the time of the crime. The victim was four years younger. This is an appreciable age differential, indicative of the fact that that Appellant and not the victim was in control of events. This aggravator is entitled to substantial weight. The second aggravating circumstance is Appellant's deliberate mental state as maintained over a period of hours in immediate contact with the victim. Appellant held an animus toward the victim and an intent to inflict injury and pain and finally death upon her. Additionally, she engaged in planning and executing the burning of the body. Even though a part of this criminal intent and activity formed the basis for the sentence for confinement, a major part is separate and distinct from that intent and activity, and indicates a mind capable of maintaining the intent to inflict grave injury and pain upon another in immediate circumstances over an extended period. Of Appel-

---

1. The State, demonstrating an exceptional capacity for understatement, refers to these events as "bad family dynamics and an unorthodox childhood." Brief of Appellee, p. 9.

lant's awareness of the dire consequences to the victim there is no doubt. Of Appellant's gratification at those consequences there is no doubt. The trial court's consideration of these two aggravating circumstances was not improper or unreasonable as covered by another conviction in the case.

## III

The trial court, having determined that the victim is a person under eighteen years of age and is deceased, designated her mother, Jacqueline Vaught, as a victim representative. Ind.Code § 35–38–1–2 (Burns Supp. 1992). She provided a "victim impact" statement to enable a probation officer to conduct a pre-sentence investigation. Ind.Code § 35–38–1–8.5 (Burns Supp.1992). The trial court also permitted other family members to testify as to the effects that the murder had on their lives.

Appellant claims that the trial court erred in permitting family members other than the appointed victim representative to testify regarding the the unpleasant effects of the crime. Appellant claims that only a single, appointed representative is permitted to offer "victim impact" testimony and that the additional witnesses' testimony unfairly prejudiced the court against her, resulting in the maximum possible sentence for her crimes.

 There is nothing in the statute which supports Appellant's interpretation. The purpose of the statute is to guarantee that the interests of the victim of a crime are fully and effectively represented at the sentencing hearing. *Schwass v. State* (1990), Ind., 554 N.E.2d 1127. In a murder case, this function may be better served by several witnesses than by one. While it may be best for purposes of judicial economy and objectivity to use one witness to communicate the impact of the crime on the victims, the statute does not require it. *See* Ind.Code § 35–38–1–7.1(a)(6) (Burns Supp.1992).

In addition, it is unclear what the harm to Appellant could be. There was no jury to be outraged at the heinous nature of the crime; this was a sentencing hearing, where the trial judge is presumed to be unbiased. "We credit judges with the ability to remain ob-

jective notwithstanding their having been exposed to information that might tend to prejudice lay people." *White v. State* (1982), Ind., 431 N.E.2d 488, 490. Permitting the additional testimony was not error.

### Conclusion

The convictions are affirmed. We agree with the trial court at the outset, that the frame of mind accompanying the drawn out and exceptionally intrusive conduct constituting the homicide should be reflected in a sentenced enhanced beyond the standard or basic one. Despite the lack of specific consideration of Appellant's childhood background and resulting mental disturbances as having mitigating weight, we are unable to say upon due consideration that the additional mitigating weight of this omitted factor is sufficient to warrant the conclusion that the maximum sentence of sixty years is manifestly unreasonable in light of the offense and the character of the offender. Appellate revision of sentences or remand for a new sentencing hearing is not warranted. The sentences are affirmed.

SHEPARD, C.J., and GIVAN, DICKSON and SULLIVAN, JJ., concur.