Chad Aaron WALTON, Appellant,

v.

STATE of Indiana, Appellee.

No. 03S00–9305–CR–505.

Supreme Court of Indiana.

May 30, 1995.

Lorinda Meier Youngcourt, Evans, Dowling & Youngcourt, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

## ON DIRECT APPEAL

DeBRULER, Justice.

This is a direct appeal from the sentence given appellant following his conviction upon his plea of guilty but mentally ill to the murder of his parents. Ind. Appellate Rule 4(A)(7). Ind.Code Ann. § 35–42–1–1 (West Supp.1991); Ind.Code Ann. § 35–36–2–5 (West Supp.1991). The trial court imposed an aggregate sentence totalling 120 years. Appellant claims this sentence is manifestly unreasonable. Ind. Appellate Rule 17(B).

### Facts [1]

Appellant was sixteen years old and an eleventh grader, without a juvenile or criminal record, when he brutally beat and stabbed his adoptive parents, Ginger and Chuck Walton, as they lay asleep in their bed. The cause of the mother's death was a blunt force injury to the head, face, and brain; the father died from blunt force to the head and a stab wound in the back of the chest. Appellant fled and was captured the following day in Champaign, Illinois. Appellant confessed, pleading guilty but mentally ill. The trial court accepted his pleas of guilty but mentally ill in convicting him. Mental illness in this usage is defined as follows:

> "Mentally ill" means having a psychiatric disorder which substantially disturbs a person's thinking, feeling, or behavior and impairs the person's ability to function; "mentally ill" also includes having any mental retardation.

Ind.Code Ann. § 35–36–1–1 (West 1986). In accepting such a plea, the trial court was required to and did conclude that appellant was mentally ill at the time of the crime. Ind.Code Ann. § 35–35–1–2 (West 1986). This conclusion is manifestly supported by the reports of medical witnesses whose opinions regarding appellant's condition ranged from personality and emotional disorder, warranting psychiatric treatment, to outright schizophrenia with auditory hallucinations. Later, the trial court, in justification of enhancing the two sentences beyond the standard sentence, concluded that there was a single aggravating circumstance and a single mitigating one.[2] The trial court further con-

---

1. Most of these facts are obtained from appellant's own statement.

2. The Court described the aggravator:

 The only aggravating circumstance by statute found to exist by the Court is that imposition of a reduced sentence would depreciate the seriousness of the crime. Murder is the most serious offense under Indiana law. The unjustified, brutal and unrepentant murder of both parents by their only child is devastating to the family and the entire community. Such an act under the circumstances of this case cause[s] other parents to question the results of their attempts to discipline their own children.

 The Court described the mitigator thus
 The only mitigating circumstance by statute found to exist by the Court is that the defendant has no history of delinquent or criminal activity. This factor is reduced by the fact that the defendant skipped school on at least two occasions and while out did, as a part of a group, engage in some vandalism.

cluded that consecutive sentences were appropriate by reason of the fact that two distinct lives had been taken.

### Discussion and Decision

 This Court is endowed by the state constitution with the authority to review and revise sentences. Ind. Const. art. VII, § 4. We have chosen to limit that authority by rule. App.R. 17(B). In applying this rule we engage in a two-step procedure. First, we determine whether the sentence appears to be disproportionate, i.e., "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Fointno v. State* (1986), Ind., 487 N.E.2d 140, 145. If we determine that such manifest unreasonableness may be present, we must then determine whether "no reasonable person could find such sentence appropriate to the particular offense and offender." *Id.* If, and only if, we find such inappropriateness, then we will revise a sentence in order to make it reasonable. *Id.* Sentencing is normally left to the sound discretion of the trial court. *See, e.g., Fugate v. State* (1993), Ind., 608 N.E.2d 1370.

 Here the trial court imposed consecutive sentences for murder and enhanced each sentence because of aggravating circumstances. The use of aggravating and mitigating factors in sentencing is governed by statute. Ind.Code Ann. § 35-38-1-7.1 (West Supp.1991). Subsection (b) lists nine aggra-

vating circumstances, subsection (c) lists ten (10) mitigating circumstances, and subsection (d) emphasizes that a sentencing court may consider other matters in arriving at an appropriate sentence. Where the evidence in the record supports the imposition of the sentence received, we have not hesitated to affirm the maximum sentence, even for a juvenile offender. *See, e.g., Loveless v. State* (1994), Ind., 642 N.E.2d 974.[3] While we do not relish the prospect of incarcerating a child until she or he passes middle age, we are painfully aware that extreme behavior justifies extreme sanctions. Loveless, like appellant, was only sixteen years of age at the time of the crime, but she actively participated in the lengthy torture and gruesome murder of a twelve-year-old girl. In spite of our concerns about the trial court's lack of consideration of the abuse that Loveless had suffered, we upheld the imposition of the maximum sentence of sixty (60) years. *Id.* at 978.

 In this case appellant did actively participate in the gruesome killing of two people, his adoptive parents. Such participation clearly supports a sentence greater than the presumptive sentence for a single murder. However, according to the sentencing order, the sole statutory aggravating circumstance was "that imposition of a reduced sentence would depreciate the seriousness of the crime." Ind.Code Ann. § 35-38-1-7.1(b)(4) (West Supp.1991).[4] That aggrava-

---

The Court specifically rejects the arguments put forward indicating that the crime was the result of circumstances unlikely to recur, that the victim induced or facilitated the offense, that there are substantial grounds tending to excuse or justify the crime, though failing to establish a defense or that the person acted under strong provocation for the reasons described in earlier sections.

In consideration of appellant's mental illness, the trial court opined:

The Court finds that the defendant expressed no remorse for his acts. The diagnoses of Narcissistic Personality and borderline Personality Disorder appear most probable and are consistent with the defendant's presentation to the Court in a number of hearings over the course of more than a year. The defendant showed a remarkable absence of emotional response or involvement throughout the process. The absence of remorse combined with or perhaps as a part of the personality disorders would indicate that attempts at rehabilita-

tion would be futile. A further concern for the Court is the probability that the defendant "faked bad" on some tests to appear more "ill" than he is.

3. In order to prevent dramatic injustice, we have also been quite willing to modify sentences. *See, e.g., Best v. State* (1991), Ind., 566 N.E.2d 1027 (reducing sentence where trial court's application of separate enhancement provisions resulted in 27 year sentence for operating vehicle while intoxicated).

4. The trial judge went on to comment, "Failure to run the sentences consecutively would indicate that the life of defendant's mother had no value after the father's death. Concurrent sentencing would indicate to the defendant and others that after someone has murdered one person that the person can act without concern for consequences until caught even to the extent of killing again." The judge ignores the fact that he has already

tor only supports a refusal to reduce the presumptive sentence. *Evans v. State* (1986), Ind., 497 N.E.2d 919, 923; *Shackelford v. State* (1993), Ind.App., 622 N.E.2d 1340, 1346. Since a reduced sentence was not under consideration, this aggravating circumstance does not support the action in enhancing both sentences and ordering them served consecutively. Since an additional aggravator is not present, the 120 year sentence may have been appropriate in light of the character of the offense, but it was manifestly unreasonable for this offender, who was sixteen years old, mentally ill, and lacking a history of criminal or delinquent acts. There are, however, non-statutory aggravating circumstances, for instance, multiple killing, on the face of the record which clearly support separately served consecutive sentences for each homicide.

### Conclusion

Accordingly, we affirm the convictions for murder and, in agreeing with that part of the sentence of the trial court that made it clear that the circumstances of this crime required a clear and distinct punishment for each killing, now order that this cause be remanded for the imposition of two consecutive forty (40) year sentences.

SHEPARD, C.J., and SULLIVAN and SELBY, JJ., concur.

DICKSON, J., dissents with separate opinion.

DICKSON, Justice, dissenting.

In the appellate review of criminal sentences, this Court may not revise a sentence authorized by statute except where "manifestly unreasonable," which means "no reasonable person could find such sentence appropriate to the particular offense and offender." Ind.Appellate Rule 17(B). I decline to conclude the trial court's sentencing decision meets this extreme standard.

I further disagree with the majority's conclusion that the aggravating circumstances supported consecutive sentences but not enhanced sentences. Trial courts are autho-

rized to impose enhanced sentences (greater than the statutory presumptive sentence) based upon the same list of factors upon which it may base the imposition of consecutive terms when there are multiple convictions. Ind.Code § 35-38-1-7.1(b). Thus, if the consecutive sentencing was proper, so were the individual sentence enhancements.

In the present case, the trial court's detailed written findings include the following aggravating circumstances: "given the opportunity, the defendant is likely to kill again"; "no evidence of remorse"; premeditation and advance planning of the murders and escapes; "[t]he killing itself was brutal and vicious"; "the defendant's continuing cold-blooded resolve to eliminate the sources of unwelcome authority from his life"; and "imposition of a reduced sentence would depreciate the seriousness of the crime." Record at 337–38. The majority correctly notes that the "depreciate the seriousness" factor may generally only be used to support a refusal to reduce the presumptive sentence. However, the other aggravating circumstances properly support the trial court's decision both to enhance the sentences and to order them served consecutively. The trial court is not limited in the matters it may consider in determining the sentence. Ind. Code § 35-38-1-7.1(d).

The majority opinion observes that the trial court accepted the defendant's plea of guilty but mentally ill but declined to consider the defendant's mental illness as a mitigating circumstance. If the trial court erred in failing to consider such mitigating circumstances, a preferable appellate resolution would be to remand to the trial court for reconsideration and a new sentencing order.

---

enhanced the sentence for the murder of the father. This comment supports the imposition of

consecutive sentences, but offers no rationale at all for the enhanced sentences.