Kevin CARTER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below ).

No. 48S00–9805–CR–303.

Supreme Court of Indiana.

May 27, 1999.

Robert W. Rock, Anderson, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Attorneys for Appellee.

BOEHM, Justice.

Kevin L. Carter was convicted of the murder of a seven-year-old girl and sentenced to sixty years imprisonment. Carter was four-

teen years old at the time of the crime. On direct appeal, we affirmed the murder conviction but remanded for a new sentencing hearing because (1) it was unclear whether the trial court relied on a forty or fifty year presumptive sentence and (2) the trial court's sentencing statement did not properly substantiate aggravating circumstances and did not elaborate some potentially mitigating circumstances. *Carter v. State*, 686 N.E.2d 1254, 1262–64 (Ind.1997). A second sentencing hearing was held on January 7, 1998, and the trial court again imposed the maximum sentence of sixty years. This appeal followed, in which Carter essentially argues that the trial court, although applying the correct presumptive sentence, repeated the other sentencing errors. Carter also suggests that his sentence is manifestly unreasonable. We conclude that, although the trial court did not err in its finding of aggravating and mitigating circumstances, the maximum sentence of sixty years is manifestly unreasonable for this fourteen year old offender. Accordingly, we reduce the sentence to fifty years imprisonment.

## I. Carter's Contentions

Carter asserts that the trial court failed to find mitigating circumstances supported by the record, improperly found aggravating circumstances that "were not supported by subsidiary facts and dealt with unsubstantiated allegations," and made only a "summary sentencing statement, which is difficult to review and understand." The contention is essentially that the sentencing statement is "deficient both for what it says and what it does not say." *See Scheckel v. State*, 655 N.E.2d 506, 509 (Ind.1995). He also repeats his contention from his first appeal that his sentence is manifestly unreasonable.

## II. The Sentencing Statement

■ At the second sentencing hearing, the trial court took judicial notice of the evidence and arguments presented at Carter's two trials and his first sentencing hearing. Accordingly, we will consider the evidence offered and arguments made at both sentencing hearings. Although not a model of clarity, the record indicates that the trial court found two mitigating circumstances and two or three aggravating circumstances. Carter's age (fourteen) and lack of a criminal record were found to be mitigating circumstances at both sentencing hearings. At the second sentencing hearing the trial court described the aggravating circumstances as follows: [1]

> it is true that as part of the entire series of events that gave rise to this horrible tragedy, . . . [Carter] was, in fact, charged with kidnaping, confinement and child molestation. He was charged with child molestation as an A Felony. I don't have those charges. They never came to me, but the fact that these others . . . And the evidence supports all of that, but he was not charged with that. But I think it's fair to find all that as aggravating circumstances. Further, the young man, although he had no significant juvenile record, there was a prior incident on August the 6th . . . wherein he was, uh . . . There was allegations that he had molested his sister. So it appears that he has a history of sexual deviancy. Um, further, um, to say that it's a murder is, of course, correct and the jury found that that's what happened. Anybody who saw the evidence would have to come away with the terrible realization that this is an awful, horrible, brutal disfiguring murder. I mean his footprints were on the child's body. She had multiple stab wounds. . . . The whole scenario amounts to aggravations. It just was virtually indescribable what this young man did to that child.

Because the trial court relied on aggravating or mitigating circumstances to deviate from the presumptive sentence, it was required to

---

1. The trial court also found several aggravating circumstances at the first sentencing hearing but did not repeat them at the second hearing: (1) the risk that Carter will commit another crime; (2) the victim was less than twelve years of age; (3) Carter was in need of correctional or rehabilitative treatment that can best be provided by a penal facility; and (4) imposition of a reduced sentence or suspension would depreciate the seriousness of the crime. The first two of these are proper aggravating circumstances in this case, and the second is clearly supported by the record. However, the trial court did not mention any of these four factors in its second sentencing statement.

(1) identify all of the significant mitigating and aggravating circumstances, (2) state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) articulate the court's evaluation and balancing of the circumstances to determine if the mitigating circumstances offset the aggravating ones. *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986).

### A. *The Mitigating Circumstances*

■ This is not a case in which the trial court "made no reference to mitigating circumstances, neither to specify that the court found none to exist nor to state that any existing mitigators were outweighed by aggravators." *See Tunstill v. State*, 568 N.E.2d 539, 545 (Ind.1991). Rather, the trial court found two mitigating circumstances, but failed to find several other offered mitigating circumstances. An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *See Brown v. State*, 698 N.E.2d 779, 783 (Ind.1998) (citing *Crawley v. State*, 677 N.E.2d 520, 523 (Ind.1997)) ("[F]ailure to find a factor to be mitigating that is clearly supported by the record may indicate that evidence on the point was overlooked."); *see also Hammons*, 493 N.E.2d at 1254 (sentencing statement must identify all "significant" mitigating circumstances); *Wilkins v. State*, 500 N.E.2d 747, 749 (Ind.1986) ("If significant mitigating circumstances are clearly

supported by the record, it would be proper to remand with instructions to reconsider the sentence and enter a new sentencing statement in compliance with the foregoing requirements.").

At the first sentencing hearing, the trial court specifically asked defense counsel in his final summation to "please point out to me ... what you believe to be mitigating circumstances as would be reflected by the record." Trial counsel discussed several potentially mitigating circumstances at that hearing and mentioned some of these again at the second sentencing hearing. Of those discussed, the trial court found only Carter's young age and that he had "no significant criminal record" to be mitigating. In this appeal, Carter asserts that the trial court should have found several other factors to be mitigating.[2]

■ First, Carter suggests that his below average I.Q. of eighty-nine and an alleged behavior disorder are mitigating circumstances. Although both of these factors were mentioned in a psychiatric report attached to the presentence report, neither was argued as a mitigating circumstance during summation. Trial counsel did not view either factor as significant enough to warrant any mention at either sentencing hearing. Moreover, a substantial percentage of the population has an I.Q. in the range of Carter's but continues to function in compliance with our laws, and the evidence of Carter's alleged behavior disorder is not clearly supported by the record.[3]

---

2. Defense counsel suggested at the first sentencing that the following constituted mitigating circumstances: (1) Carter faced the ordeal, especially the second trial, without family support; (2) Carter was never disruptive in court; (3) Carter's youthful age; (4) no prior criminal history; (5) Carter behaved well in school and was doing well in school ("was not truant and he even made decent grades"); and (6) he suffered verbal and physical abuse as a child. At the second sentencing hearing, defense counsel noted Carter's youthful age, "somewhat unstable childhood," including being the "victim of some physical, mental, and emotional abuse," and no prior criminal history.

Carter does not raise the first two of these on appeal. In any event, they do not rise to the level of significance required to command the trial court's consideration. Defendants in a criminal trial should be expected to observe courtroom decorum and never be disruptive. Moreover, many criminal defendants go to trial

for serious charges without family support. A trial court need not find this unfortunate circumstance to be mitigating.

3. Carter characterizes his alleged mental health problems in stark terms. "His MMPI showed that he had a serious impulse control problem. He suffers from a behavior disorder, in particular, 'appositional defiant disorder or conduct disorder.' Dr. David Dean was of the opinion that the Defendant committed an act of 'affective aggression' when he committed the offense. In short, the Defendant did not plan the act but acted out of or in conformity with his impulsive characteristics." This characterization leaves out other significant parts of the report. Dr. Dean also concluded that the MMPI-A "did not reveal the presence of a serious mental disorder or impaired contact with reality." Moreover, the report observed that Carter "may have a behavior disorder that could be diagnosed as either Oppositional Defiant Disorder, or Conduct Disor-

---

The trial court did not abuse its discretion by failing to find either of these to be mitigating circumstances.

■ Carter also contends that he "was known as a good child. He had never been in trouble before, and he was respectful to adults." He cites to the testimony of his aunt and father, both of whom indicated that Carter had never mistreated other children and had always been respectful to adults. His aunt, however, testified that she had not had regular contact with Carter and his father testified that he had been incarcerated for dealing cocaine since Carter was eight years old. Moreover, as discussed in part B, *infra*, this testimony is contradicted by an allegation that Carter attempted to molest his three-year-old sister three weeks before the murder at issue in this case. In light of all of these considerations, we cannot say that this offered mitigating circumstance was "clearly supported by the record," *see Wilkins*, 500 N.E.2d at 749, or that the trial court abused its discretion by failing to find it to be mitigating.

■ What remains of Carter's argument is that (1) his academic achievement while in custody awaiting trial and (2) the verbal and physical abuse he suffered as a child should have been considered as mitigating circumstances. As a preliminary matter, we note that neither of these is a statutory mitigating circumstance. *See* IND.CODE § 35–38–1–7.1(c) (1998). Nevertheless, as to the first of these, Carter offered the testimony of Michael Welch, a school teacher at the Madison County Detention Center. Welch testified at the first sentencing hearing that Carter "is a B ... B+ student. He's doing quite well academically." Carter cites to no authority that holds that academic achievement while incarcerated and awaiting trial is a significant mitigating circumstance that must be identified or credited by the trial court at sentencing. Although Carter's academic achievement in the face of a pending murder charge is laudable, the trial court did not abuse its discretion by failing to find it as a mitigating circumstance.

■ As to the other proffered mitigator, Carter merely mentions his "abusive childhood" in passing without any further explanation and only a single record citation to a psychological evaluation that was attached to the presentence report. The presentence report noted that Carter "described his stepfather as both verbally and physically abusive." It also quoted Carter as saying that his mother "threw things, swung baseball bats, everything. You name it, she probably did it." A psychiatric evaluation prepared before trial and attached to the presentence report also notes that Carter gave "some history of what could be emotional and physical abuse from [his] mother. He talk[ed] about his mother paddling him, hitting him with a coat hanger, etc." The psychological evaluation mentioned above noted that Carter "complains that his mother has often been physically aggressive to him.... He says that when his mother was angry that she would often hit him with her open hand or her fist, or with coat hangers, shoes, belts and other household objects." The record thus contains uncontradicted assertions of an abusive childhood based solely on Carter's own statements. Nevertheless, the trial court was not required to find Carter's abusive childhood as a mitigating circumstance. *See Page v. State*, 615 N.E.2d 894, 896 (Ind. 1993) ("Evidence of a troubled childhood does not require the trial court to find it to be a mitigating circumstance."); *see also Blanche v. State*, 690 N.E.2d 709, 715 (Ind. 1998) (citing *Page* and finding no error in trial court's failure to find defendant's "troubled youth" as a mitigating circumstance, noting that the only evidence of his childhood was contained in the presentence report and the defendant "ma[d]e no argument about the effects or facts of his background").

### B. *The Aggravating Circumstances*

Carter also contends that the trial court abused its discretion in finding aggravating

der," but also concluded that psychological testing and two clinical interviews "did not reveal any evidence of psychosis, mental retardation or any other *serious* mental infirmity, disease or defect that might have seriously effected his mental state at the time of the offense." (emphasis in original).

circumstances. His brief categorizes the trial court's finding of aggravating circumstances as follows: "(1) that the Defendant committed other offenses in the course of committing this offense (a' reference to the charges, which were not waived to adult court, alleging Kidnaping and Confinement and Child Molestation); (2) allegations that the Defendant had molested his sister; and (3) the facts and circumstances of the murder." The sentencing statute requires trial courts to consider the "nature and circumstances of the crime committed," see IND. CODE § 35–38–1–7.1(a) (1998), and the third factor was properly considered as such and is not challenged on appeal. Instead, Carter challenges only the first two of these.

■■■ As to the first factor, we note that kidnaping, confinement, and child molesting charges were filed along with the murder charge against Carter in juvenile court but jurisdiction was waived to adult court for the murder charge only. See IND.CODE § 31–30–3–4 (1998). Without citation to authority, Carter argues that the trial court's consideration of evidence of these other crimes punishes him "for crimes he had not been convicted of and denies him his right to due process for a fair hearing on those allegations." However, he does not contest that the evidence presented at trial, including his confession, supports these charges. Regardless of Carter's characterization of evidence of these charges as a separate aggravating circumstance, the trial court did not abuse its discretion by considering this evidence as part of the "nature and circumstances of the crime" aggravator.[4]

■■■ Carter also contends that the trial court should not have considered an allegation that he attempted to molest his sister three weeks before the murder in this case. According to the presentence report, "[i]t seems that on August 6, 1994, Kevin was accosted by his mother for allegedly attempting to molest his three-year-old sister." However, the psychiatric report attached to the presentence report states that Carter "denies any history of being sexual[ly]

abused and denies ever having sexually abused anyone else, including his siblings." At the first sentencing hearing, both Carter and his counsel indicated that they had reviewed the report and were "aware of no errors in it." The defendant generally has the onus of pointing out any factual inaccuracies in the presentence report. Brown, 698 N.E.2d at 782 (citing IND.CODE § 35–38–1–12(b) (1998)); see also Gardner v. State, 270 Ind. 627, 634, 388 N.E.2d 513, 517–18 (1979) ("the assertions in the [presentence] report will be accepted as true unless challenged by the defendant") (construing predecessor statute). Moreover, the trial court observed that evidence related to Carter's attempted sexual assault of his sister "was in the first trial" but "the Prosecutor elected not to put it in . . . because of [Indiana Evidence Rule] 404(B)[.]" The evidence rules, other than those with respect to privilege, do not apply to sentencing hearings. See Ind. Evidence Rule 101(c). Uncharged crimes may properly be considered at a sentencing hearing. See Kent v. State, 675 N.E.2d 332, 340–41 (Ind.1996) (letters from women who knew defendant and reported that he had been physically abusive to them in the past could be considered at sentencing hearing on the issue of defendant's past and his character). Under these circumstances, the trial court did not abuse its discretion in considering Carter's attempted molestation of his sister as an aggravating circumstance.

### C. The Weighing of Aggravators and Mitigators

■■■ As a final requirement of the sentencing statement, the trial court must evaluate and balance the mitigating circumstances to determine whether they offset the aggravating circumstances. Hammons, 493 N.E.2d at 1254. When the trial court properly identifies and articulates all significant aggravating and mitigating circumstances, this requires that the trial court merely indicate that the aggravating circumstances outweigh the mitigating circumstances. The trial court did this.

---

4. In addition, these charges were apparently still unresolved in juvenile court at the time of Carter's sentencing. Pending charges are a proper

sentencing consideration. Flinn v. State, 563 N.E.2d 536, 544 (Ind.1990).

In sum, the sentencing statement is not defective.

### III. Manifestly Unreasonable

■ Carter also suggests that his sentence is manifestly unreasonable.[5] This claim requires us to reexamine all valid aggravating and mitigating circumstances to consider whether the sentence imposed was "manifestly unreasonable in light of the nature of the offense and the character of the offender." *See* Ind. Appellate Rule 17(B). This case presents as mitigating circumstances Carter's youthful age and his lack of criminal history, and as aggravating circumstances the facts and circumstances of the crime (including evidence of other charges) and his attempted molestation of his sister.

■ At the time of Carter's crime, the presumptive sentence for murder was forty years. *See Carter v. State*, 686 N.E.2d 1254, 1262–63 (Ind.1997) (citing *Smith v. State*, 675 N.E.2d 693 (Ind.1996)). Therefore, assuming that the aggravating circumstances outweighed the mitigating ones, the trial court had a range of twenty years in which to enhance the sentence. The trial court found that the aggravating circumstances outweighed the mitigating circumstances to such an extent as to justify the imposition of the maximum sentence.

■ We have no way of knowing which factors were assigned what level of significance. Sentencing decisions often defy quantification. However, cases with roughly similar aggravating and mitigating circumstances provide a somewhat objective benchmark to aid our review of a sentence alleged to be manifestly unreasonable. *See Fointno v. State*, 487 N.E.2d 140, 148 (Ind.1986). Unlike the briefs after remand, the briefs in Carter's first appeal attempt to analogize or distinguish Carter's case from other sentencing challenges, but Carter invoked cases from other jurisdictions that are not particularly helpful under the manifestly unreasonable standard of Indiana's Appellate Rule 17(B). However, the State argued that "[t]he nature and circumstances of Carter's crime are very similar to those of the defendant's in *Poling v. State*, 515 N.E.2d 1074 (Ind.1987)." In *Poling*, the trial court found several aggravating circumstances including the "risk that Poling would commit another crime, Poling's flight following his crime, his conduct prior to arrest, demonstrating a course of conduct indicative of continuing criminal intent, and the heinousness of this crime." *Id.* at 1081. In addition, the trial remarked on the brutal facts of the crime. The court found as mitigating circumstances the age of the defendant (seventeen) and his lack of a prior criminal record. *Id.* at 1076, 1081. On these facts, we held that the imposition of the maximum sentence of sixty years for murder was not manifestly unreasonable.

More recent cases have also presented us with similar facts of a youthful defendant who lacked a prior criminal record. As in *Poling*, we found the maximum sentence not to be manifestly unreasonable in *Loveless v. State*, 642 N.E.2d 974 (Ind.1994). In that case, the trial court found the defendant's age (sixteen) and lack of delinquent or criminal record as mitigating circumstances. *Id.* at 976.[6] However, the trial court also properly found two non-statutory aggravating circumstances: (1) the victim of the murder was only twelve years old and (2) "the 'gruesome nature' of the crime, 'involv[ing] planning and result[ing] in the confinement of the victim for a period of over eight (8) hours and suffering by the decedent for the last

---

5. Carter's only mention of the manifest unreasonableness of his sentence in this appeal is a one sentence recitation of the now defunct Appellate Rule 17(B)(2) standard. Normally such a poorly advanced claim will be found waived for the failure to present a cogent argument. *See* Ind. Appellate Rule 8.3(A)(7). However, in his first brief to this Court, Carter did raise the issue and developed a cogent argument, and the trial court considered the record of the first sentencing hearing in imposing the sentence we now review.

6. On appeal, we rejected the defendant's argument that her "overwhelmingly difficult childhood" should have been accorded mitigating weight. The trial court made no reference to this factor, and we found no error because "[t]here was no indication of how her admittedly painful childhood was relevant to her level of culpability" for the murder of which she was convicted. *Id.* at 976–77.

four (4) to five (5) hours of her life' and 'badly mutilat[ing]' the victim's body." *Id.* at 977. On these facts, we affirmed the sixty year maximum sentence. *Cf. Tingle v. State,* 632 N.E.2d 345, 351 (Ind.1994) (maximum sentence imposed on seventeen-year-old defendant upheld; mitigating weight of defendant's youth "greatly exceeded" by aggravators including age of victim (seventy-eight), defendant's prior juvenile history and parole status, and the brutality of the crime).

Under somewhat different circumstances, we have reduced sentences involving youthful offenders. In *Walton v. State,* 650 N.E.2d 1134 (Ind.1995), we reduced a 120 year sentence imposed on a sixteen year old defendant who killed both of his adoptive parents to eighty years. We noted that the trial court had improperly found as the sole aggravating circumstance "that imposition of a reduced sentence would depreciate the seriousness of the crime." *Id.* at 1136 (quoting IND.CODE § 35-38-1-7.1(b)(4)). Moreover,

> [s]ince an additional aggravator is not present, the 120 year sentence may have been appropriate in light of the character of the offense, but it was manifestly unreasonable for this offender, who was sixteen years old, mentally ill, and lacking a history of criminal or delinquent acts. There are, however, non-statutory aggravating circumstances, for instance, multiple killings, on the face of the record which clearly support separately served consecutive sentences for each homicide.

*Id.* at 1137.

Later that same year, we considered the propriety of imposing a seventy year sentence on a seventeen-year-old defendant for felony murder (sixty years) and conspiracy to commit robbery (ten years). *See Widener v. State,* 659 N.E.2d 529 (Ind.1995). Although the trial court in that case considered the youthful age of the defendant as a mitigating circumstance, it did not describe other mitigating circumstances that we found to be significant, namely the defendant's lack of criminal history, his guilty plea and acceptance of responsibility, and the fact that his co-defendants initiated and primarily formulated the plan to rob. *Id.* at 534. On these facts, we reduced the defendant's sentence to fifty years for murder to be served concurrently with the sentence for conspiracy to commit robbery. *Id.*

Although the nature of Carter's offense is not as severe as that in *Loveless,* the other aggravating and mitigating circumstances are virtually identical. *Poling* also presents the same mitigating circumstances and similar aggravating ones. On the other hand, Carter's case is similar to *Walton* and *Widener,* with the exception that Carter was not mentally ill (as in *Walton*) nor did he accept responsibility by pleading guilty or have co-defendants who initiated and primarily formulated the crime (as in *Widener*).

Appellate Rule 17(B) requires our consideration of both the "character of the offender" and the "nature of the offense." As to the character of the offender, Carter is fundamentally different from all of the defendants in the previously mentioned cases in one very significant respect: he was fourteen at the time of the offense, not sixteen or seventeen. Our decisional law has recognized that a defendant's youth, although not identified as a statutory mitigating circumstances, is a significant mitigating circumstance in some circumstances. *See, e.g., Walton,* 650 N.E.2d at 1137. This is a more powerful factor for a fourteen-year-old defendant than it is for one who is sixteen or seventeen. The legislature has made at least two significant distinctions between the treatment accorded to offenders who are sixteen or older and those under sixteen. First, a child who is at least sixteen at the time of committing murder may be sentenced to death or life imprisonment without parole, but those penalties are not available for a child under the age of sixteen. IND.CODE § 35-50-2-3(b) (1998). Second, although a child who is at least ten years of age when committing an act that would be murder may be waived to adult court, *see id.* § 31-30-3-4, other serious charges may be waived only if the child is at least sixteen at the time of the alleged offense. *See id.* § 31-30-3-5; *but see id.* § 31-30-3-2(1) (permitting the waiver of fourteen year olds when certain conditions are met). The legislature has also determined that juvenile courts do not have jurisdiction when an individual is at least sixteen

years of age and is alleged to have committed murder, kidnaping, rape, carjacking or a number of other serious offenses. *See id.* § 31–30–1–4. In short, these statutes evince strong legislative sentiment that a sixteen year old should be treated differently from a younger child in at least some respects. Nevertheless, for our purposes today, the same term of years is available to a fourteen year old as is available to a seventeen year old or a thirty-five year old convicted of murder. Individuals of any age convicted of murder face the same presumptive, minimum, and maximum sentence.

The trial court also found another mitigating circumstance and an aggravating circumstance that go to the character of the offender. Carter's lack of a criminal history was found to be mitigating, but his attempted molestation of his sister was found to be aggravating. As to the nature of the offense, as the trial court found and as is true of most murder cases, the facts of this case are severe and troubling. Moreover, this was the murder of a child under the age of twelve, which is a statutory aggravating circumstance. *See id.* § 35–38–1–7.1(b)(5).

The crime(s) of a fourteen-year-old defendant may, under other circumstances, warrant the imposition of the maximum sentence. In light of the nature of this offense and character of this offender, however, Carter's very youthful age is sufficiently mitigating that the maximum sentence is manifestly unreasonable. However, we are also impressed by the age of the victim and the circumstances of the crime elaborated by the trial court. The trial court was within its discretion in finding that these two mitigating circumstances were outweighed by the significant aggravating circumstances. Reduction to something between the presumptive and the maximum imposed by the trial court is necessarily somewhat arbitrary. Nevertheless, our constitutional power to review and revise sentences allows this Court to reduce a sentence to any term of years within the statutorily authorized range, and requires us to consider claims of excessive sentences. In this case, a balancing of these significant and troubling factors leads the majority of this Court to conclude by consensus that Carter's sentence should be reduced to fifty years imprisonment.

## Conclusion

This case is remanded to the trial court with instruction to reduce the sentence to fifty years imprisonment.

SHEPARD, C.J., and SULLIVAN and SELBY, JJ., concur.

DICKSON, J., concurs and dissents with separate opinion.

DICKSON, J., concurring and dissenting.

I concur with the majority in Parts I and II, but dissent from the majority's determination in Part III that Carter's sixty year sentence for murder is manifestly unreasonable.

Under our Rules of Appellate Procedure, this Court "will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). We have emphasized that this review is very deferential to the trial court: " '[T]he issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so.' " *Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (quoting *Prowell v. State,* 687 N.E.2d 563, 568 (Ind.1997), *cert. denied,* — U.S. —, 119 S.Ct. 104, 142 L.Ed.2d 83 (1998)). *See also Thacker v. State,* 709 N.E.2d 3, 10 (Ind.1999); *Brown v. State,* 698 N.E.2d 779, 783–84 (Ind.1998); *Weeks v. State,* 697 N.E.2d 28, 30 (Ind.1998).

Because I do not find the sentence ordered by the trial judge to be clearly, plainly, and obviously unreasonable, I cannot agree to revise it and would affirm the sentence imposed by the trial court.